### ALEX. McBAIN v. TARLETON TURPIN AND OTHERS.

**Resulting Trust — Estoppel — Fraud.**

A. solicited B. to buy C.'s land, B. authorized A. to make the purchase for B. C., not being acquainted with B., required A. to execute his notes for the land and C. executed his title bond to A. B. took possession of the land, claimed, cultivated, and paid taxes on it for nine years with A.'s approval. B. having paid A. back all the purchase money except $25, and with A.'s knowledge and consent, sold the land to D. and executed to him his title bond, agreeing to convey the legal title to D. upon payment of the purchase money. D. agreed with A. to pay him the $25 claimed by A. to be due him on the original purchase price. After this A., by actual or ostensible sale, assigned to E. his bond for title from B., E. at the time being in full possession of the above facts and thereupon C. conveyed the legal title to E.

D. sues E. for the legal title. *Held,* that A.'s participation in B.'s sale to C. estopped him, in equity, from claiming the land as his own. And his subsequent assertion of an adverse title and sale of it to E. was, therefore, fraudulent and void as to D.

**Same — Equity.**

After the sale by B. to D. A. held his ostensible equity in trust for D., and as E. purchased with full notice of that trust, the law imposes the same trust on him.

**Statute — Construction of — Bond for Title.**

Sections 20 and 22, Revised Statutes (2 Stanton, p. 230), literally applies only to executed contracts of sale, and not to sales by bond for title.

APPEAL FROM MADISON CIRCUIT COURT.

February 26, 1866.

OPINION OF THE COURT:

In March, 1854, Tarleton Turpin, residing in Madison county, desiring his father-in-law, James McMillen, to remove from

Clarke county and live with or near him, went to him and advised him to buy a tract of about twenty acres of land adjoining his (Turpin's) homestead, which land its owner, Edmund Baxter, offered to sell for $300. McMillen consenting that Turpin might make the purchase for that price which he said he could afford to pay, Turpin, on the 20th of March, 1854, bought the land, but as Baxter did not know McMillen, he required Turpin to make the contract in his own name, and accordingly Turpin executed his own notes for $150 each and took Baxter's bond to himself for a conveyance of the legal title to him on full payment. Shortly afterward McMillen removed to Madison and claimed and cultivated and paid taxes on the land as his own for several years with the concurrence of Turpin, who, in various ways, continued to recognize his right.

On the 24th of April, 1863, McMillen, in the presence of Turpin and with his concurrence, sold the land, as his own, to the appellant, McBain, for $500, payable in two installments, took his notes therefor, and executed his own bond to convey to him the legal title on the payment of the first installment—McBain agreeing with Turpin to pay him out of the first installment $25 claimed as still unpaid of the original $300 of which McMillen paid all except that balance.

Nevertheless, on the 6th day of October, 1863, Turpin, by either an actual or ostensible sale, assigned to the appellee, Henry N. Willis, Baxter's bond for a title, and on the 27th of the same month, the very day on which this suit was instituted, Turpin gave to Willis a receipt for the alleged consideration then not apparently due, and Baxter conveyed the legal title to Willis.

On the said 27th of October, 1863, McBain filed his petition in equity alleging, in substance, the foregoing facts, charging Turpin and Willis with a fraudulent combination against him, asserting that when Willis made his pretended purchase, he had full notice of the subsisting trust and of the sale to McBain with Turpin's concurrence, and praying for a conveyance of the legal title on payment of the price including the said $25, all of which he offered in the petition.

The Circuit Court having dismissed the petition, McBain appeals to this court.

The facts just recited and also the alleged notice and collusion result, as the best judicial conclusion, from the pleadings and

evidence. And from these established facts two alternate questions arise: First, was the actual trust resulting to McMillen of such a binding character as to be enforcible, as between himself and Turpin, had there been no sale to McBain? Second, if not so enforcible, did Turpin's co-operation or acquiescence in the sale to McBain operate as an estoppel against his assertion of every available equity remaining in himself for his own beneficial use, and does Willis hold the legal title in trust for the appellant?

1. Satisfied that the whole consideration of the bond from Baxter to Turpin, except $25, had been paid by McMillen, we would have had but little difficulty in adjudging that, *prima facie,* an implied trust thereby resulted in McMillen's favor had not the common law, on this subject, been modified by our Revised Statutes, sections 20 and 22 (2 Stanton, 230), which enacted that " When a *deed* shall be made to one person and the consideration therefor shall be paid by another, no use or trust shall result in favor of the latter," unless the " *grantor* shall have taken a *deed* in his own name without the consent of the person paying the consideration, or, in violation of some trust, shall have purchased the lands deeded with the effects of another person," in each of which latter classes of cases fraud would open the door to oral testimony of the trust which it was the object of the first provision to prevent when there was no such fraud.

In this case, although McMillen did not authorize Turpin to make the contract for his own use, nor in his own name, yet his apparent acquiescence after he knew what had been done and had felt assured that the title would be conveyed to *him* prevented him from pleading that he did not consent to the memorial of the contract as written and signed. Nor is there any pretense for saying that, with money furnished by McMillen to buy the land for himself, Turpin, in violation of the trust, had misapplied the fund by buying for his own use.

But the statute literally applies only to executed contracts of sale and not to sales by bond for a conveyance. And whether the enactment constructively applies to such a case as this is a new and rather vexatious question. To fortify the literal interpretation we might argue that the reason for excluding executory sales was that, in such inchoate contracts, the person paying the price expected that, on payment by him, the title would in good faith

be conveyed to him, and was, therefore, willing that the covenant should be made to another, when he would not have consented to a solemn and irrevocable conveyance of the title to any other person without some express stipulation in the deed or some other writing declaring the trust.

On the other hand, a more comprehensive construction might be urged on the idea that the spirit and object of the enactment embrace executory as well as executed contracts, and that, therefore, the legislative intent was to interdict oral testimony of such a resulting trust in all such sales, unless there was such fraud as the statute reserves.

Whatever may be our own inclination of opinion on this question it is not without further consideration, such as to allow a judicial division and, therefore, and especially as this case can be decided more satisfactorily on another ground, we will not attempt to entrench our judgment behind one more doubtful. 2. Even if the actual trust was not, as between McMillen and Turpin, enforcible under the statute, it seems to us that Turpin's participation in McMillen's sale to the appellant not only admitted the trust, but by an equitable estoppel prevented him from relying on the statute against the appellant or claiming the land as his own in equity. His conduct, altogether, implied his authority to McMillen to sell the land and an assurance to McBain that the equitable title was in McMillen and that he himself either had no beneficial interest or would never assert any claim inconsistent with McMillen's. It was on this implied waiver and assurance that McBain's agent bought the land from McMillen. Turpin's subsequent assertion of an adverse title and sale of it to Willis was, therefore, fraudulent and void as to McBain. After the sale by McMillen to McBain, Turpin held his ostensible equity on an implied trust for McBain; and, as *Willis* purchased with full notice of that trust, the law imposed the same trust on him. The time and manner of the sale and conveyance, however, indicated a fraudulent combination by Turpin and Willis to cheat McBain out of the land.

Turpin's constructive fraud on McMillen's sale to McBain and the actual fraud of both Turpin and Willis, in their collusion against McBain, leave no room for doubt that, in judgment of law, Willis holds the legal title in trust for McBain. The object of the appellant is to enforce that trust by compelling a convey-

ance of the legal title by Willis to him, on the equitable condition of the payment to Willis of $475 without interest (because the appellant was kept out of the use of the land) and the payment also to Turpin of the residual $25 with interest from the time he paid that sum to Baxter. To such relief the appellant is, in our opinion, justly entitled.

Wherefore, the judgment dismissing the appellant's petition is reversed, and the cause remanded for further proceedings and decree according to the principles of this opinion.